UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Foremost Signature Insurance Company, | Civil Action No.: 4:05-cv-02777-RBH |
| Plaintiff, | |
| vs. | **O R D E R** |
| Robert Parker, Sandra Edge, Carlecia Massey, and LeKeith Edmundson, | |
| Defendants. | |

This is an action in which plaintiff Foremost Insurance Company ("Foremost") seeks a declaratory judgment that its mobile home insurance policy[1] does not include coverage for bodily injuries received on April 13, 2005 by defendants Edge, Massey, and Edmondson ("Edge") and further that the plaintiff does not owe its insured, defendant Parker, indemnification for any judgment or settlement that may be obtained by Edge, Massey, and Edmondson. Defendant Parker has not responded to the lawsuit, and the Clerk has entered his default. The remaining defendants answered and counterclaimed for bad faith and breach of the implied covenant of good faith and fair dealing. However, on March 29, 2007, they filed a notice of voluntary dismissal of the counterclaim.

Foremost filed motions for summary judgment in 2006 on the basis that it is entitled as a matter of law to a declaration that no coverage exists for the underlying claims. By Order dated March 8, 2007, this Court entered an Order with consent of the parties withdrawing the plaintiff's motion for summary judgment with leave to re-file. The Order also found as moot the defendants' motion for

---

[1] The policy provides homeowner's insurance coverage for covered losses to the dwelling at 3641 Half Pint Road; Longs, SC and structures on the premises as well as personal liability coverage for Robert A. Parker, the named insured, and coverage for medical payments to others.

1

extension of time to file a response to the motion.[2] On March 9, 2007, plaintiff re-filed its motions for summary judgment. On March 29, 2007, defendants Edge, Massey, and Edmondson responded to the plaintiff's motion for summary judgment and filed a cross motion for summary judgment.[3] The plaintiff filed a memorandum in opposition to the cross motion for summary judgment on April 13, 2007.

Plaintiff contends that the defendants' cross motion for summary judgment should not be considered because it was filed after the deadline for filing dispositive motions under the scheduling order. In this instance, the Court will consider the defendants' cross motion since it addresses the identical issues raised in the plaintiff's timely motion for summary judgment and both parties indicate that the material facts are not in dispute. "Moreover, summary judgment may be rendered in favor of the nonmoving party, even though that party has made no formal motion under Federal Rule of Civil Procedure 56." *Sentara Virginia Beach General Hospital v. Lebeau*, 188 F.Supp.2d 623, 626 (E.D.Va. 2002) [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986), "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence" and 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* 3d § 2720, at 351-52 (1998)].

Additionally, the plaintiff can show no prejudice, as it filed a memorandum in opposition to the defendant's untimely motion essentially reasserting its own claim for summary judgment.

---

[2] Defendants had not filed a timely response to the motion and had requested to be allowed to file a late response on the basis that they had not received timely notice of the electronic filing of the motion. *See* Docket Entry 23-2, Affidavit of attorney Julia G. Young.

[3] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing."

*Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id*., quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

*Factual Overview*

Robert and Donna Parker offered to allow Sandra Edge and her two children to stay on the Parker property, without paying rent, for about four months so that Edge could improve her financial condition. Edge considered the Parkers to be friends; Mr. and Mrs. Parker testified that they allowed Edge to live there because they wanted the children to have a place to live. Edge was also employed by Parker's wife in her cleaning business. Edge moved into a vacant trailer on the property of either Parker or his daughter in January of 2005. For various reasons, including the fact the trailer did not have its own septic system, Edge moved out of the trailer and into a 1979 Winnebago Brave motor home owned by Parker which was parked on the Parker property. The motor home was located fifteen

3

to twenty feet from the back door of the Parker residence, which was a mobile home. Parker ran an electrical cord from his mobile home to the motor home so that the motor home would have electricity. Parker allowed Edge to use the kitchen and bathroom facilities in his mobile home when needed, except when he and his wife were sleeping.

In early April of 2005, Edge received a grant from an organization known as "The Helping Hand" so that she and her children could move into a permanent home of their own. Around that same time, Parker disconnected a gas line which had previously been connected to the camper/motor home and removed the water tank. On April 13, 2005, Edge attempted to light the gas oven in the camper/motor home. An explosion occurred, and she and the children suffered severe burns.

### *Legal Arguments/Exclusions under the Policy*

Foremost contends that several exclusions in the mobile home policy apply to bar liability and medical payment coverage: (1) Edge regularly resided on the premises; (2) Edge was an insured under the policy because she was using a covered vehicle on the premises with Parker's consent; and (3) the injuries arose out of the discharge of pollutants.

### *Policy Exclusion for Person who Regularly Resides on the Premises*

First, Foremost contends that the personal liability and medical payments coverages do not apply due to the exclusion for "**bodily injury** or **property damage** (1) sustained by any person who regularly resides on your **premises**." (Policy, page 12) (emphasis in original). The term "premises" is defined by the policy as "the place where you reside that is described on the Declarations Page and the dwelling and other structures located there." "Premises also includes: a. Sidewalks and driveways adjacent to your dwelling. b. Vacant land, other than farm land, owned by or rented to any of you." (Policy, p. 2). The term, "regularly resides" is not defined in the policy; nor is the term, "structure".

Edge claims that neither of the two requirements of this exclusion, "premises" and "regularly

4

reside" are met. The Court will first discuss whether Edge "regularly resided" on the Parker property. Second, the Court will discuss the defendants' argument that they did not reside on the "premises" under this policy exclusion.

The Edge defendants contend that they did not "regularly reside" on the premises, since they were temporary residents on the property and did not reside in the same household as the Parkers. The parties have not cited, nor has the Court located, a South Carolina case construing a provision in a homeowner's insurance policy excluding liability or medical payment coverage for persons who "regularly reside" on the insured premises. Therefore, the Court will look to cases by analogy which have discussed whether an individual was a resident of the insured's household. Both parties cite *Buddin v. Nationwide Mutual Insurance Co.*, 250 S.C. 332, 157 S.E.2d 633 (1967), in which the South Carolina Supreme Court construed a "resident relative" provision of an automobile policy and stated that a person may be considered to be a resident of the insured's household where he is not "a temporary or transient visitor" *Id.*, citing *Hardware Mut. Cas. Co. v. Home Indemnity Co.*, 241 Cal.App.2d 303, 50 Cal.Rptr. 508, 514 (1966). In *Buddin*, the court held that the policy provision extending coverage to a resident relative was a clause of inclusion and should be broadly construed in favor of coverage. Therefore, although the nephew did not intend to live in the uncle's home permanently, the court found that he was a resident relative entitled to coverage under the policy.

In *Auto-Owners Insurance Co. v. Horne*, 356 S.C. 52, 586 S.E.2d 865 (Ct. App. 2004), the South Carolina Court of Appeals confronted issues regarding a "resident relative" provision and discussed extensively the meaning of the term, "resident" in finding that a child of divorced parents was not a resident relative of the non-custodial father. The court stated that, in determining residency for insurance purposes, courts look at the facts and circumstances of each case and consider such factors as intent of the parties, "physical presence, and permanency of abode." *Id.*, 586 S.E.2d at 871, citing

5

*Coriasco v. Hutchcraft*, 245 Ill.App.3d 969, 185 Ill.Dec.769, 615 N.E.2d 64, 65 (1993). The court emphasized that permanency is an important factor in determining residency, citing *Barricelli v. Am. Universal Ins.Co.* 583 A.2d 1270, 1271 (R.I. 1990)("In order to determine if a person is a resident of a particular household, the court must consider whether in the totality of the circumstances that person maintains a physical presence in the household with the intent to remain there for more than a mere transitory period, or that person has a reasonably recent history of physical presence together with circumstances that manifest an intent to return to the residence within a reasonably foreseeable period.") and *Herbst v. Hansen*, 46 Wis.2d 697, 176 N.W.2d 380, 384 (1970) (test for determining whether a person remains a member of a household is whether the person has the intent to return).

Applying the factors enunciated in *Auto Owners*, it is clear and undisputed by both Parker and Edge that it was never anyone's intent that this was to be her permanent abode. It is undisputed that Edge did not pay rent to Parker and that Parker had agreed for Edge to stay on the property for about four months, until she could get on her feet financially. "She said four months, and the four months had not expired. . ."(Edge depo., p. 52). "Was there any understanding that she could stay there as long as she needed to? A. No. Q. I told her she could stay there three months until she saved her money and could find a place to stay." (Donna Parker depo., p. 7). "Would you agree that Sandra and her children were just staying in your camper just temporarily until she got back on her feet and could find her own place? A. Yeah." "She was just somebody that needed help. She wasn't a friend. She wasn't a guest. She wasn't nothing. Just somebody that had two kids that was going to be on the street and I tried to help her."(Robert Parker depo., pp. 6,13).

Parker permitted Edge and her children to use the bathroom and kitchen in their home and to do laundry there. They also ate some meals together at the Parker home. (Robert Parker depo., p. 8; Donna Parker depo., p. 8; Edge depo., p. 46).

6

"Where the words of an insurance policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." *Greenville County v. Insurance Reserve Fund*, 313 S.C. 546, 443 S.E.2d 552, 553 (1994). When an insurance policy is "susceptible to more than one reasonable interpretation, one of which would provide coverage," the court "must hold as a matter of law in favor of coverage." *Gaskins v. Blue Cross-Blue Shield of South Carolina*, 271 S.C. 101, 245 S.E.2d 598, 602 (1978). Exclusions to coverage should be interpreted "narrowly and to the benefit of the insured." *Horry County v. Insurance Reserve Fund*, 344 S.C. 493, 544 S.E.2d 637, 640 (Ct. App.2001). A policy clause of inclusion should be construed broadly in favor of the insured, while an exclusion is given a more restrictive interpretation. *Buddin*, 157 S.E.2d at 337.

It is undisputed that the term "regularly resides" is not defined in the policy and is contained in a policy exclusion. In fact, "reside" is also not defined. Therefore, the term should be interpreted in a manner favorable to the insured and in a way that would provide coverage. Neither the insured, Parker, nor the person seeking to recover under the liability coverage, Edge, indicate that Edge had any permanent intent to remain on the property past the four month period. This was to be a temporary situation to allow Edge to get on her feet and is further evidenced by the grant she received from "The Helping Hand" to move into a permanent home. The record is devoid of any testimony indicating any intent by Edge to permanently stay on the property. The fact that the motor home was only a temporary residence for Edge is further supported by the fact that she and her children were taking care of most of their basis human needs by borrowing the facilities of Parker's mobile home. There was no evidence presented that the motor home had any type of permanent connection to the real estate such as a septic tank hook-up. Applying South Carolina case law to the facts presented, the Court finds as a matter of law that Edge did not "regularly reside" on the property for purposes of the exclusion.

Edge also contends that the camper is not a "structure" under the policy definition of

"premises". Again, as noted above, the policy does not contain a definition of "structure". Therefore, any ambiguity should be construed against the insurance company and the exclusion should be construed narrowly.

Defendants cite the definition of "structure" in the American Heritage Dictionary as "something constructed, such as a building" and assert that a motor home does not meet this definition or that the word is at best ambiguous. Plaintiff does not supply the Court with any definition of "structure" but asserts that the motor home was included as part of the premises since vacant land is covered. Courts have held garages, barns, storage facilities, and repair shops to be structures. *See* D.E. Buckner, Annotation, *What Constitutes a "Private" Structure or a Private Structure not Used for Mercantile Purposes within the Meaning of Property Insurance Policies*, 19 A.L.R.3d 902 (1968). Courts have found "appurtenant structures" to include barns, garages, laundry buildings, sheds, and utility buildings. *See*, Emile F. Short, Annotation, *What are "Appurtenant" Private Structures with Provision of Property Insurance Policy Expressly Extending Coverage to such Structures*, 43 A.L.R. 3d 1362 (1972). *See also, Kelly v. South Carolina Farm Bureau Mut. Ins. Co.*, 316 S.C. 319, 450 S.E.2d 59 (Ct. App. 1995)(holding barns or outbuildings to be appurtenant structures under a homeowner's policy under an estoppel theory).

The Court finds that the term "structure" in the mobile home policy in the case at hand does not include a motor home parked on the property. Other than the fact an electrical cord had been run from the motor home to the Parker's mobile home, there is no indication that the motor home is affixed to the property. Parker testified that the motor home could be driven but had not been driven for several years while he was renovating it. Plaintiff's argument that this is a structure is also inconsistent with its claim below treating the camper/motor home as a vehicle. The Court finds that the motor home was not a structure under the policy exclusion.

Therefore, the policy exclusion for persons who regularly reside on the premises does not apply.

### *Edge as an Insured due to her use of a Vehicle*

Foremost contends that Edge and her children were insureds under the policy and that the policy excludes "[b]odily injury or property damage to any of you as defined in this policy." (Policy, p. 12). The policy defines "you" for purposes of liability coverage to include the insured's family members and "other persons while they are using a vehicle, to which this policy applies, on your premises and with the consent of any of you." (Policy, p. 1). The policy excludes coverage for injuries arising out of the use of "land motor vehicles designed for use on public roads, owned or operated by or rented or loaned to any of you. This exclusion does not apply if the land motor vehicle is not subject to motor vehicle registration because it is: (1) Used exclusively on your premises; or (2) Kept in dead storage on your premises." (Policy, p. 13). The policy also excludes coverage for injuries arising from the use of recreational land motor vehicles but provides that the exclusion does not apply to "recreational land motor vehicles on your premises" or "in dead storage".

The undisputed facts are that the camper/motor home in which the Edge family was living had been parked, and not driven, for several years before the explosion in April of 2005. The tags had expired several years before. It was not being used as a vehicle at the time of the accident and had not been so used for years. Therefore, it was being kept in dead storage at the time of the accident.

Exclusions are to be read narrowly and to the benefit of the insured. *Cincinnati Insurance Co. v. Urgent Care Pharmacy, Inc.*, 413 F. Supp.2d 644, 648 (D.S.C. 2006). The Court finds that this exclusion does not apply as a matter of law.

### *Pollution Exclusion*

Coverage E-Personal Liability provides: "If a claim is made or a suit is brought against you for damages because of **bodily injury** or **property damage**, caused by an accident to which this coverage

9

applies, we will (1) Pay up to the Limit of Liability shown on the Declarations Page for the damages for which you are legally liable; (2) Provide a defense at our expense by attorneys of our choice." Coverage F-Medical Payments to Others provides coverage for medical expenses incurred as a result of " an accident causing **bodily injury**." (Policy, p. 11)(emphasis in original).  Both coverages refer specifically to an "accident".

Foremost asserts that the policy contains an exclusion applicable to both personal liability and medical payments coverage which excludes bodily injuries arising out of "the actual, alleged or threatened discharge, dispersal, release, escape of, or the ingestion, inhalation or absorption of pollutants at or from any property you own. . ."  The policy defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, lead paint components and compounds, and waste."

Edge contends that the injuries in the case at bar did not "arise out of" the release of any pollution but rather from the negligence of the insured homeowner Parker in failing to "cap off" the detached pipeline from the propane tank or in failing to disconnect or remove the propane tank. Edge cites *Kent Farms, Inc. v. Zurich Ins. Co.*, 140 Wash.2d 396, 998 P.2d 292 (2000), a case involving a fuel delivery driver who was injured by back-flow of fuel. *Kent Farms* describes the history of the pollution exclusion and points out that the purpose of the exclusion is to prevent liability insurance companies from being liable for "massive environmental cleanups required by CERCLA[4] and similar legislation." *Id*., 998 P.2d at 295.[5]  The court held that the pollution exclusion did not apply to the facts

---

[4] Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 (1995).

[5] *See, Helena Chemical Co. v. Allianz Underwriters Insurance Co.*, 357 S.C. 631, 594 S.E.2d 455 (2004) (environmental cleanup costs not covered due to pollution exclusion).

of the case, where the fuel actually struck the injured party.

Under the facts alleged here, the Edge defendants' injuries did not arise from the release of gas or ingestion, inhalation, or absorption of propane gas but rather from the alleged negligence of Parker. The damages or bodily injuries here allegedly arose from the alleged negligent act of Parker and the subsequent explosion and not from the release of pollutants. Therefore, the pollution exclusion does not apply. *See,* 11 Lee R. Russ, *Couch on Insurance*, § 155:82 (2007)("Even in the presence of an express exclusion for contamination and/or pollution, an event that can be considered pollution or contamination may be within coverage when it results from a covered peril. . . Such circumstances raise the classic 'proximate cause' issue. . .")[6].

Additionally, these defendants suffered burn injuries that arose from a fire that resulted from the explosion. The policy does not list "fire" as a pollutant. Applying the pollution exclusion here would be akin to denying coverage for the homeowner who is having a neighborhood cookout and, because of his lack of experience in operating a gas grill, causes an explosion which injures his guests. Clearly that cannot be the intent of this type of exclusion.

## *Conclusion*

The Court has carefully examined the record in the case at bar and has determined that no genuine issue of material fact exists and judgment as a matter of law is appropriate. For the foregoing reasons, the undersigned **GRANTS** the defendants' [28] cross motion for summary judgment and denies the plaintiff's [26] motion for summary judgment. Plaintiff's [25] motion for summary judgment is rendered moot by the dismissal by the defendants of their counterclaim for bad faith.

---

[6] The determination of whether Parker was negligent and, if so, whether this negligence was the proximate cause of the injuries suffered by Edge and whether Edge was comparatively negligent will be determined in the underlying lawsuit.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge

June 26, 2007
Florence, South Carolina